# AFFIDAVIT OF DEPUTY U.S. MARSHAL TIMOTHY J. ORAVA IN SUPPORT OF A CRIMINAL COMPLAINT

I, Timothy J. Orava, Criminal Investigator Deputy United States Marshal being duly sworn, depose and state:

1. I am a Criminal Investigator Deputy United States Marshal ("DUSM") with the United States Marshals Service ("USMS"). I have held this position since October 1995. I am currently assigned to the Massachusetts Sex Offender Investigations Branch, and I conduct various criminal investigations including fugitive investigations and investigations of alleged violations of the Sex Offender Registration and Notification Act ("SORNA").

2. In August 2020, the USMS, initiated an investigation of JARRETT WOODRUFF ("WOODRUFF") pertaining to violations of SORNA under 18 U.S.C. §2250(a).

3. I make this affidavit in support of an application for a Criminal Complaint charging WOODRUFF with a violation of 18 U.S.C. §2250(a). The information contained within this affidavit is based upon my own investigation and upon information provided to me by other law enforcement officers. Where conversations or statements of others are related herein, they are related in part and in substance. Moreover, because this affidavit is submitted for a limited purpose, I have not set forth every fact that I have learned in the course of this investigation.

**RELEVANT LEGAL STANDARDS**

4. On July 27, 2006, the SORNA was enacted as Title I of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, 120 Stat. 587, 34 U.S.C. §§20901 - 32 (2006). SORNA established "a comprehensive national system for the registration of [sex] offenders" to harmonize the existing patchwork of registration laws that existed under both federal and state laws across the country. *Id*. §20901.

1

5. In general, SORNA requires sex offenders to register and defines "sex offender" as an individual who was convicted of a "sex offense," including certain federal, state, local, tribal, foreign, and military offenses, and attempts or conspiracies to commit such offenses as well. 34 U.S.C. §§16911(1), (5)(A)(v), (6) (2010).

6. Section 2250 of Title 18 of the United States Code provides that "[w]hoever -- (1) is required to register under the Sex Offender Registration and Notification Act ... (2)(B) travels in interstate or foreign commerce ... and (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act" shall be subject to certain penalties, including imprisonment for not more than 10 years.

7. SORNA, 34 U.S.C. §§20911 et seq., provides that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." *See* 34 U.S.C. §20913(a).[1]

8. SORNA further provides that a sex offender "shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved ... and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." 34 U.S.C. §20913(c).

9. The term "sex offender" is defined as an individual who was convicted of a sex offense. 42 U.S.C. § 16911(1). The term "sex offense" includes "a criminal offense that has an element involving a sexual act or sexual contact with another." 34 U.S.C. §20911(5)(i).

---

[1] The term "resides" is defined as "the location of the individual's home or other place where the individual habitually lives." *Id.* at 20911(13). The phrase "habitually lives" has generally been defined to mean any place in which the sex offender lives for at least 30 days. *See* 73 Fed. Reg. 38030, 38061-62.

10. SORNA divides sex offenders into three Tiers and assigns each Tier a different registration period. *See* 42 U.S.C. §209915(a). Sex offenders are required to keep their registrations current for their "full registration period," the length of which is determined by their "tier" status. 34 U.S.C. §20915(a). SORNA divides sex offenders into three tiers and assigns a different registration period to each tier. *Id.* Tier III sex offenders are required to register for life. *Id.* § 16915(a)(3). Tier III sex offenders include certain recidivist sex offenders and individuals who have been convicted of the most serious sex offenses, such as felony offenses involving aggravated sexual abuse, sexual abuse, sexual contact with victims below the age of thirteen, or kidnapping of minors. *Id.* §20911(4). Tier II sex offenders are required to register for twenty-five years. *Id.* §20915(a)(2). Tier II sex offenders are certain recidivist sex offenders and individuals who have been convicted of most felony sex offenses against minors, including production or distribution of child pornography. *Id.* § 20911(3). Tier I sex offenders are required to register for fifteen years. *Id.* § 20915(a)(1). Tier I sex offenders include all other sex offenders whose qualifying sex offenses do not meet the criteria for Tier II or Tier III. *Id.* §16911(2)

**RELEVANT FACTS**

11. On August 15, 2018, WOODRUFF was convicted in Pittsfield District Court, Massachusetts, of three counts of Indecent Assault & Battery on a Child under 14 years of age in violation of the Massachusetts General Law. On one count, WOODRUFF was given a one-year suspended sentence and was placed on probation for one year. On the two other counts, WOODRUFF was sentenced to 251 days' imprisonment. He is required to register as a sex offender under Massachusetts state law, and the Massachusetts Sex Offender Registry Board has classified him as a Level 3 sex offender, which is the

highest risk category.

12.     On October 3, 2018, WOODRUFF completed his most recent registration form with the Pittsfield, Massachusetts Police, providing them with his status as being "homeless." He also provided them the address of "Barton Crossing" shelter as his residence. The Barton Crossing shelter facility provides shelter and meals, among other services, to those without housing. It is located at 1307 North St, Pittsfield, Massachusetts. Pursuant to the state of Massachusetts sexual offender registration guidelines, Woodruff's listed status of "homeless" requires him to register every 30 days in person with his local police department in the state of Massachusetts.

13.     The October 3, 2018 registration form, signed by WOODRUFF, included a certification by WOODRUFF that he had been informed of his obligations to (1) register with the Massachusetts Sex Offender Registry Board and/or the police department, (2) to verify his residence, and (3) to provide any change of his residence not less than 10 days prior to any change, in addition to various other notification obligations.

14.     The October 3, 2018 registration form also informed WOODRUFF, should he move to another state, to immediately make contact with and make his presence known to authorities in that state regarding his residence, employment and any attendance at an institution of higher learning.

15.     Further, WOODRUFF left the section on the October 3, 2018 registration form for a "Secondary OR Out of State Address" blank. In the "Closest Living Relative" section, WOODRUFF listed his mother Lorrie Woodruff, also known as Lorrie Flemming, and provided her address as "Atlanta, Fulton, GA 30303" along with a phone number of (404) 622-6822.

4

16. WOODRUFF's most recent registration date of October 3, 2018 is corroborated in the Sex Offender Registration Information System (SORIS), which is the Massachusetts law enforcement database that contains information about sex offender registrations. The system revealed that WOODRUFF never registered as a sex offender in Massachusetts after the October 3, 2018 form was completed. This last completed registration expired on November 4, 2018.

17. On November 21, 2018, Pittsfield, Massachusetts Police responded to 123 Second St., Pittsfield, Massachusetts to an apartment on the second floor to take a report from a female witness regarding an incident involving WOODRUFF and her 7-year old daughter that occurred between November 19 and 20, 2018. The witness left her daughter at her residence under the supervision of another adult while she and a friend went out for the evening. WOODRUFF was also sleeping over at the residence on this same night.

18. The following day the witness was made aware by her daughter that WOODRUFF came into her room and touched her in the vaginal area over her pajamas while she was sleeping. After WOODRUFF realized that the child had awakened, WOODRUFF stopped and eventually left the room. Following this incident WOODRUFF has not been seen again by the witness.

19. On December 5, 2018, Pittsfield, Massachusetts, police made an entry into the SORIS "Offender Comments" section stating, "Placing Woodruff in violation. He is required to register every 30 days due to being homeless. He is not registered since Oct 18. He is also a suspect in an Indecent A&B on minor 11/19." On the same date, December 5, 2018, the Pittsfield police placed WOODRUFF in violation status in the system.

20. On December 6, 2018, the Pittsfield District Court issued an arrest warrant

for WOODRUFF regarding his default on his alleged violation of his conditions of probation for his 2018 sex offense conviction.

21.     On February 12, 2020, Berkshire Superior Court, Massachusetts, issued an arrest warrant for WOODRUFF regarding his indictment on a subsequent offense of Indecent Assault & Battery on a Child Under 14 years of age, for the above described November 2018 incident involving the 7-year old victim, and Failure to Register as a Sex Offender.

**The United States Marshals Service Investigation**

22.     In September 2020, investigators with the USMS conducted an interview of a family member of WOODRUFF. During this interview the family member indicated that WOODRUFF had told him/her that WOODRUFF has some outstanding legal issues back in Massachusetts. WOODRUFF portrayed the details to the family member as being less serious than the actual charges he is being sought on. The family member stated that he/she believed WOODRUFF was living with his mother, Lorrie Flemming, and sister, Meredith C. Woodruff in Marietta, Georgia. The family member also gave information that WOODRUFF goes by "Jay" and had a current phone number for WOODRUFF as being (404) 423-6889 (Target Phone 1).

23.     According to records provided by Sprint, which is now part of T-Mobile,[2] the subscriber on this provided number (404-423-6889), Target Phone 1, shows as being

---

[2] The subscriber and call detail records provided by Sprint, which is now owned by and is part of T-Mobile, indicates that Target Phone 1 operates off both Sprint & T-Mobile cell site systems depending on the area of Target Phone 1's location. In other words, if the closest tower is a Sprint tower, the call or transmission is likely to use that tower, and records will be recorded in the Sprint system. If the closest tower is a T-Mobile tower, the call or transmission is likely to use that tower, and records will be recorded in T-Mobile system. Even though the two companies are merged, they are keeping, at least at the moment, separate sets of records and compliance with legal process at the companies is done separately. This requires the request to be addressed to both Sprint & T-Mobile to receive the most comprehensive records response.

registered to the same account since August 15, 2018. The chronology of the associated names and addresses are as follows for the account billing address(es):

    a.    Effective: 8/15/2018 Jay Wood 4672 Freedom Ct, Middletown, OH 45044.

    b.    Effective: 8/21/2018 Jay Wood, 4672 Freedom Ct, Middletown OH 45044

    c.    Effective: 9/24/2018 Jay Wood, 1307 North St, Pittsfield, MA 01201

    d.    Effective: 11/27/2018 Jay Wood, 755 SW Hank Aaron Dr, Atlanta, GA 30315

    e.    Effective: 12/26/2019 Jarrett Woodruff, 2050 SW Austell Rd, Marietta, GA 30008

    f.    Effective: 7/7/2020 Jay Woodruff, 2050 SW Austell Rd, Marietta, GA 30008

24. Analysis of the subscriber & call records, provided by Sprint, which is now part of T-Mobile, shows the subscriber names to be variations of WOODRUFF'S name, to include the use of his real name and the nickname of "Jay" as indicated by the family member.

25. The addresses and dates also matched the circumstance of WOODRUFF using the 1307 North St, Pittsfield, MA, 01201 address on the subscriber record around the same time frame he provided the address on his last sex offender registration form in Massachusetts.

26. The telephone records also include the information about the time frame

shortly after November 19-20, 2018, which is when the Pittsfield, Massachusetts police identified WOODRUFF as a suspect in the new offense against a child. This information shows that on November 27, 2018, WOODRUFF changed his Target Phone 1 subscriber record by listing a new address of 755 SW Hank Aaron Dr, Atlanta, GA 30315. This movement away from Pittsfield, Massachusetts is consistent with the fact that Pittsfield Police were unable to locate WOODRUFF at his listed address in Massachusetts.

27. Recent call records also show communications to and from Target Phone 1 to numbers that currently belong to both WOODRUFF's mother and sister. The call records show communications between Target Phone 1 and WOODRUFF'S mother and sister between the dates of August 25, 2020 and September 17, 2020.

28. In September 2020, investigators with the USMS conducted an interview with a representative from the Lexington Austell, LLC rental management office who is responsible for the apartments located at the address of 2050 SW Austell Rd, Marietta, GA. During this interview the rental management office representative confirmed that WOODRUFF's sister and mother had lived in one of their apartments in the apartment complex centered at this address but had moved out several months ago and did not leave a forwarding address.

29. The Lexington Austell, LLC rental management office representative also disclosed that an adult male, prior to the departure of WOODRUFF'S sister and mother, had come into their office to make several repair requests for their apartment but was told by the rental office personnel that he was not authorized to make such requests since he was not on the lease. The rental management office representative, who was there during this interaction, confirmed, after viewing WOODRUFF'S picture, that the individual who

came into their office was WOODRUFF.

30. In August 2020, according to records provided by the United States Department of Housing and Urban Development, WOODRUFF's sister recently updated her address to 360 Riverside Parkway, Unit 6G, Austell, GA 30168.

31. Investigation by the USMS has confirmed that WOODRUFF's sister lives at this address with her five children. WOODRUFF's mother has also been identified to be at the address, however, the USMS has been unable to determine whether WOODRUFF was spending time present at this location.

32. Further analysis of the Target Phone 1 records shows 154 calls, between August 24 and September 23, 2020, to/from Target Phone 1 and a number associated to Smith and Wes Express Movers, Atlanta, Georgia. Subsequent investigation determined that the phone number belonged to one of the company's owners, David Smith.

33. On October 13, 2020, investigators with the USMS conducted an interview of company David Smith. Smith said that WOODRUFF had been working for the company for the last several months. Smith provided contact information for WOODRUFF to include an address of 8032 Perimeter Trace East, Dunwoody, GA 30346, which is a suburb of Atlanta, GA.

34. In a subsequent written and verbal statement, David Smith indicated that WOODRUFF started working for Smith's company at the end of November 2018 after WOODRUFF's brother, who at the time was working for them, asked Smith to hire WOODRUFF.

35. Smith stated that WOODRUFF was hired as a full-time employee, and Smith filed Department of Treasury Internal Revenue Service (IRS) 1099 forms each of

9

the years WOODRUFF worked for Smith. Smith was initially able to provide the USMS investigators with a copy of WOODRUFF's 2019 1099 form, but he also indicated that he believes he had one stored in archives for 2018. Smith said he had prepared one for WOODRUFF regarding the pending 2020 year as well. The 2019 IRS 1099 form listed WOODRUFF's name, social security number along with WOODRUFF's address as being 2050 Austell Road, Marietta, GA 30008.

36. Smith also said that when he paid WOODRUFF by check, the checks were always cashed locally by WOODRUFF at cash checking locations in Georgia. WOODRUFF had picked up his last check prior to his arrest on the morning of October 12, 2020. Smith provided a corresponding pay stub receipt for this transaction with WOODRUFF.

37. Additional analysis of the Target Phone 1 records showed 429 calls, between August 23 and September 23, 2020, to/from Target Phone 1 and a number associated with Erika Johnson with an address of 8032 Perimeter Trace East, Dunwoody, GA 30346.

38. On October 14, 2020, investigators with the USMS conducted an interview of the rental management office representative and a maintenance worker of the 8032 Perimeter Trace East, Dunwoody, GA 30346 apartment. They confirmed WOODRUFF's association both with this address and with Johnson. Specifically, the maintenance worker stated that he has seen WOODRUFF walking from the apartment to a location up the street where the moving company he works for keeps their vans.

39. On October 15, 2020, investigators with the USMS conducted an interview of Erika Johnson at 8032 Perimeter Trace East, Dunwoody, GA 30346.

Johnson stated that she met WOODRUFF when she moved into the apartment in December 2019. WOODRUFF was on the moving crew she had hired to move her in.

40.     Johnson said she initiated a relationship with WOODRUFF. Around March 2020, WOODRUFF was given a key by Johnson to the apartment to come and go as he pleased. He started off by occasionally visiting and spending the night.

41.     In August 2020, his stays became more frequent and WOODRUFF kept his clothes along with other personal items at the apartment. Johnson stated he did not spend every night at the apartment but he was staying with her several times a week, which was more often than before.

42.     Johnson also stated that WOODRUFF would use the Lyft and Uber transportation services to come and go up until recently obtaining his own vehicle. Johnson described this vehicle as a silver Infiniti with a Georgia registration.

43.     On October 15, 2020, Johnson showed USMS investigators a text message that she received from WOODRUFF earlier in the day stating that he would be back to the apartment that same evening. Johnson was unaware of WOODRUFF's criminal issues and background, and she agreed to let USMS investigators know when he arrived so WOODRUFF could be placed under arrest for the outstanding warrants from Massachusetts.

44.     During the evening hours of October 15, 2020, Johnson returned home to the apartment and WOODRUFF had already let himself in. Johnson communicated to USMS investigators that WOODRUFF was at the apartment, and they responded to the apartment. Upon the investigators making contact at the apartment, WOODRUFF realized the USMS investigators were there to arrest him, and he attempted to escape.

45.     WOODRUFF fled from his apartment's balcony by climbing up and then down to the above adjoining neighbors' apartments' balconies. Upon realizing the USMS investigators presence in one of these neighbor's apartment, WOODRUFF once again tried to escape by jumping off the balcony and WOODRUFF ended up on the ground where USMS investigators made contact with him.

46.     The USMS investigators immediately summoned medical attention and WOODRUFF was transported to the hospital for treatment while being placed in custody for the outstanding warrants. WOODRUFF is currently being held by the State of Georgia on a state fugitive charge where he has been since his arrest on October 15, 2020. He is currently awaiting extradition back to Massachusetts to face state charges the state charges from Berkshire County.

47.     Subsequent to the arrest USMS investigators were given verbal and written consent to search the apartment by Johnson in order to preserve items of evidentiary value from being discarded. Specifically, USMS investigators were shown various items, by Johnson, which she identified as belonging to WOODRUFF in the apartment to include, but not limited to, clothes, wallet, keys and a cell phone.

48.     The USMS Investigators took custody of these items for preservation purposes. The items included a gray cell phone inside an LG case, a key ring with the key to the apartment given to WOODRUFF by Johnson, a key fob for the silver Infiniti car, bearing GA registration RPM5247, utilized by WOODRUFF, and a brown men's wallet with various items inside. All of these items were found in Johnson's apartment and were identified by Johnson as belonging to WOODRUFF. The items have remained in evidence bags in a USMS storage locker. It should be noted the listed Target Phone 1

device's ESN comes back to a LG brand phone.

49. On October 22, 2020, according to correspondence from the State of Georgia's Bureau of Investigations Sex Offender Registry, which is the agency responsible for maintaining sex offender registry records in Georgia, a diligent search of records shows that the registry has no record of WOODRUFF having registered as a sex offender in Georgia.

50. On October 30, 2020, the USMS investigators executed a search warrant, issued on October 28, 2020, by the Northern District of Georgia's Magistrate Judge Linda T. Walker, regarding the previously mentioned property belonging to WOODRUFF found inside the residence of 8032 Perimeter Trace East, Dunwoody, GA 30346. The results of the search revealed the following items inside the wallet. The cell phone is pending forensic extraction and analysis by USMS investigators.

51. Contained inside the brown men's wallet were the following:

   a. WOODRUFF'S state issued identification card issued from Massachusetts, with an expiration of November 19, 2020 and a copy of his Georgia's driver's license, with an expiration of September 21, 2013, along with his corresponding social security card.

   b. WOODRUFF'S two state electronic benefit cards issued by Georgia and Ohio both listed under his name.

   c. Several credit and banking cards to include a Mastercard #5314 6200 2137 0452, American Express card #3751 500650 77604 in the name Jarrett WOODRUFF, American Express card #3751 510926 53169, Suntrust debit card #5576 2152 0428 7392 in the name of Lorrie

13

Flemming, and a Visa debit card, #4403 9323 5848 8087 in the name of Jay WOODRUFF.

d. A Georgia "Breeze" card which is a stored value smart card that passengers use as part of an automated fare collection system for public transportation known as MARTA the Metropolitan Atlanta Rapid Transit Authority.

e. Three personal checks addressed to WOODRUFF from Laura P. Alford of 600 Garson Drive Northeast, #1205, Atlanta GA, 30324.

f. A Dave & Buster's game card, King's Island Gold Pass, photos, BP gas receipt from Dunwoody GA, a Pack & Load Services, INC verified crew card, and several Atlanta area business cards to include one belonging to the co-owner of Smith & Wes Express Movers Wes Jespersen.

52. Investigation into the silver Infiniti, bearing GA registration RPM5247, and the associated key fob WOODRUFF was using, revealed the owner to be a Kayla Rohloff of 844 Whitehaven Lane, Lawrenceville, GA. Additional analysis of the Target Phone 1 records showed 346 calls, between August 23 and September 24, 2020, to/from Target Phone 1 and a number associated with Rohloff.

53. On October 29, 2020, Rohloff and her husband, Deandre Gentry, gave written and verbal statements to USMS investigators. Both stated they knew WOODRUFF for the last four to five months as a coworker from Gentry's previous employment with Smith and Wes Express Movers. Rohloff and Gentry said they started

renting their extra car, the identified silver Infiniti, bearing GA registration RPM5247, for $150 a week for the last 6 weeks or so.

54. Rohloff stated that Gentry use to drive WOODRUFF, prior to them renting WOODRUFF the vehicle, to work when Gentry was working for Smith and Wes Express Movers. Rohloff said that Gentry and WOODRUFF had regular communications between each other. Gentry had mentioned to Rohloff that WOODRUFF lived in the same apartment complex as one of his bosses from the moving company.

55. It should be noted that the management office representative of the 8032 Perimeter Trace East, Dunwoody, GA 30346 apartment, where WOODRUFF was arrested, told USMS investigators that Wes Jespersen, the co-owner of the moving company WOODRUFF worked at, also lived in this same apartment complex as WOODRUFF.

56. On October 29, 2020, the USMS investigators received records pursuant to a search warrant issued October 23, 2020, by the District of Massachusetts Magistrate Judge Katherine Robertson regarding Target Phone 1, from Sprint, to include subscriber, billing, payment, call detail records with cell sites, and internet protocol data records with cell sites.

57. The subscriber and billing information matched the previously mentioned records from Sprint. The call detail records and cell site records provided by Sprint cover the date range of October 21, 2018 to October 23, 2020 but these records only give discernable cell tower information up until June 3, 2020. This is believed to be caused in part with the fact that Target Phone 1, which is a Sprint phone now part of T-Mobile, was

operating on T-Mobile's cell towers after June 3, 2020 and those requested records are still pending with T-Mobile.

58. Analysis of the Sprint cell site records shows cellular tower activity for Target Phone 1 between November 26, 2018 and October 29, 2019, primarily in the vicinity of Middletown, Ohio. Specifically, nearly 73% of the cell tower usage came from three towers within proximity to the address of 4672 Freedom Ct, Middletown OH 45044. This address was used by WOODRUFF on August 15 and August 21, 2018 regarding Target Phone 1's previously mentioned records of subscriber and billing information provided by Sprint.

59. Arrest records indicate that on November 24, 2017, WOODRUFF was taken into custody at 4670 Freedom Ct, Middletown, OH as a fugitive from justice regarding charges from Pittsfield, Massachusetts Police by Middletown, Ohio police. During the booking process, with Middletown Police, WOODRUFF provided his address as 4672 Freedom Ct, Middletown, OH 45044.

60. During the time period between November 26, 2018 and October 29, 2019, there were cell site records showing cellular tower activity outside the state of Ohio. The data show that the user of Target Phone 1 took brief trips to Kentucky and Tennessee and then returned back to the Middletown, Ohio area.

61. On November 2, 2020, according to correspondence from the Office of Ohio Attorney General, Bureau of Criminal Investigation, which is the agency responsible for maintaining sex offender registry records in Ohio, a diligent search of records shows that the registry has no record of WOODRUFF having registered as a sex offender in Ohio.

62. Further analysis of the Sprint cell site records for Target Phone 1 shows cellular calls between October 30, 2019 and June 3, 2020, primarily in the vicinity of the Atlanta, Georgia Metropolitan area. Specifically, two particular towers, located in proximity to the address of arrest at 8032 Perimeter Trace East, Dunwoody, GA 30346, accounted for approximately 34% of all the tower activity during this period.

63. During the time period between October 30, 2019 and June 3, 2020, there were cell site records showing cellular tower activity outside the state of Georgia. The data shows that the user of Target Phone 1 took brief trips to Kentucky, Tennessee, Ohio, South Carolina, North Carolina and Virginia and then returned back to the Atlanta, Georgia metropolitan area.

64. Sprint also provided Internet Protocol Data Records (IPDR) for the date range of July 30, 2020 to October 16, 2020. The IPDR with cell sites reflects the Target Phone 1's data usage through the carrier's cellular towers. The IPDR are a different kind of record than the cell site records mentioned above.

65. Analysis of these IPDR records shows that there was cellular tower activity for Target Phone 1 between July 30, 2020 to October 16, 2020, primarily in the vicinity of the Atlanta, Georgia metropolitan area, along with some cell tower activity in other parts of Georgia.

66. The USMS investigation revealed that WOODRUFF had relocated from Massachusetts to Ohio and Georgia not properly registered in either state nor had he notified the authorities in the state of Massachusetts of his departure to another state.

**PROBABLE CAUSE**

67. Based on the foregoing facts, there is probable cause to believe that WOODRUFF (1) is required to register as a sex offender under SORNA; (2) traveled in

interstate commerce, that is, from Massachusetts to Ohio and Georgia; and (3) knowingly failed to register as a sex offender in Ohio and Georgia as required by SORNA. Accordingly, there is probable cause to believe that WOODRUFF has violated 18 U.S.C. §2250(a).

68. WHEREFORE, I request that this Court issue a criminal complaint and warrant to arrest WOODRUFF.

*Timothy J. Orava / KAR*
Timothy J. Orava
Criminal Investigator
Deputy United States Marshal
United States Marshals Service

SUBSCRIBED and SWORN to before me on this 6th day of November, 2020.

*Katherine Robertson*
Honorable Katherine A. Robertson
United States Magistrate Judge

18